UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:16-cv-04272-BCW |
| | ) |
| MCCALLS COUNTRY CANNING, INC. | ) |
| | ) |
| Defendant. | ) |

## MT. HAWLEY'S RESPONSE AND OPPOSING SUGGESTIONS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), files its Response and Opposing Suggestions to Defendant's Motion for Summary Judgment, and shows the following:

### OBJECTIONS TO MCCALLS' UNCONTROVERTED FACTS

1. Admitted.

2. Mt. Hawley objects to ¶ 2 of McCalls' uncontroverted facts because it does not accurately summarize the coverage provided by the Policy. In particular, the Policy does not simply cover "all risks." Rather, the Policy provides coverage for "direct physical loss of or damage to" the Property occurring during the Policy Period, subject to all conditions, limitations, and exclusions therein.[1] Only if direct physical loss or damage occurs during the Policy Period would coverage even potentially arise under the Policy.

3. Mt. Hawley objects to ¶ 3 of McCalls' uncontroverted facts. While McCalls purports to set forth pertinent Policy provisions, it totally ignores two provisions directly pertinent to McCalls' claim, on which McCalls bears the burden of proof. As noted above, the

---

[1] *See* Policy, **Ex. A** to Mt. Hawley's MSJ [Doc. 49] at 7.

**MT. HAWLEY'S RESPONSE AND OPPOSING SUGGESTIONS TO
MCCALLS' MOTION FOR SUMMARY JUDGMENT**     Page 1

Policy only applies if direct physical loss of or damage to the Property occurs during the Policy Period.[2] In addition, any direct physical loss or damage must exceed the Policy deductible before Mt. Hawley has any obligation to pay.[3]

    4.       Mt. Hawley objects to ¶ 4 of McCalls' uncontroverted facts because it is misleading and misstates Mr. Kirchmer's testimony. In particular, while Mr. Kirchmer does not dispute that a storm occurred on September 1, 2014, he clearly disputed McCalls' contention that the storm caused direct physical loss of or damage to the Property.[4]

    5.       Mt. Hawley objects to ¶ 5 of McCalls' uncontroverted facts. McCalls cites no evidence whatsoever supporting its contention that roof leaks "got worse and more frequent" after the September 1, 2014 storm. In fact, the undisputed evidence shows a single roof leak repair a few days after this storm, but then no further repairs for over 18 months.[5]

    6.       Admitted.

    7.       Mt. Hawley objects to ¶ 7 of McCalls' uncontroverted facts. Contrary to McCalls' misleading contention, Greg Martin did not refer to or label any of his photographs with either the phrase "potential wind damage," or "wind damage."[6]

    8-10.    Admitted

    11.     Mt. Hawley objects to ¶ 11 of McCalls' uncontroverted facts. Just as it did in its motion to exclude Kirchmer's testimony, McCalls misrepresents the nature and scope of his

---

[2] *See id.*

[3] *See id.* at 4, 6.

[4] *See* Kirchmer Depo., **Exhibit A** hereto, at 62:22-63:1; 72:5-7; 78:16-23; 104:3-24; 105:18-106:3; 112:9-15; 139:23 – 140:15; 156:25-157:5.

[5] *See* Mt. Hawley's MSJ [Doc. 49] at 6, ¶ 5.

[6] *See* **Ex. B** to McCalls' MSJ [Doc. 51].

investigation.[7] It is undisputed that Kirchmer conducted a thorough investigation using the same methodology as McCalls' own engineer, and did not simply visually inspect the Property.[8]

    12-14.  Admitted

    15.     Mt. Hawley objects to ¶ 15 of McCalls' uncontroverted facts. As noted above, before Mt. Hawley has any obligation to pay McCalls, the Policy requires that McCalls sustain direct physical loss or damage to its Property during the Policy Period and that such loss or damage exceeds the Policy deductible. As set forth below and in Mt. Hawley's MSJ, McCalls cannot establish either of these prerequisites to coverage.[9]

    16.     Mt. Hawley objects to ¶ 16 of McCalls' uncontroverted facts. Mt. Hawley did not misstate the results of its investigation in its October 17, 2016 denial letter. Before Mt. Hawley denied McCalls' claim, McCalls sent a letter alleging as follows: "Mr. Martin has opined that removal and replacement of the ballast, the EPDM membrane, and the 1" polystyrene insulation is required to remediate the wind and hail damage at the Property."[10] McCalls' letter demanded that Mt. Hawley pay to totally replace the roof. Kevin Kirchmer reported to Mt. Hawley that there was no evidence of hail damage to the roof, and that isolated areas of insulation board displacement totaled less than 5% of the roof area.[11] McCalls' own engineer admits that, contrary to McCalls' allegation, the roof of the Property does not require replacement.[12]

---

[7] *See* Mt. Hawley's Response [Doc. 54] to McCalls' Motion to Exclude at 2-4.

[8] *See id.* at 4-7.

[9] *See* Mt. Hawley's MSJ [Doc. 49] at 11-14.

[10] *See* **Exhibit R** to Mt. Hawley's MSJ [Doc. 49].

[11] *See* Kirchmer's reports, **Exhibits J** and **S** to Mt. Hawley's MSJ [Doc. 49].

[12] *See* Mt. Hawley's MSJ [Doc. 49] at 8, ¶ 14.

17.     Mt. Hawley objects to ¶ 17 of McCalls' uncontroverted facts.  McCalls has cited no evidence whatsoever demonstrating that it protected the Property from further damage after the September 1, 2014 storm.

18.     Mt. Hawley objects to ¶ 18 of McCalls' uncontroverted facts.  As noted above, McCalls has cited no evidence that it took any steps whatsoever to mitigate its damages after the September 1, 2014 storm.  McCalls has not even tried to explain how placing a tarp on the <u>inside</u> of the Property mitigated any damages.  Moreover, McCalls has misstated the undisputed evidence in this case.  Far from evidence of McCalls "making continued repairs to the roof leaks post-loss," the undisputed evidence shows that, other than one minor leak repair a few days after the storm, no roof leak repairs occurred for more than 18 months afterward.[13]

19.     Mt. Hawley objects to ¶ 19 of McCalls' uncontroverted facts.  As set forth above and in Mt. Hawley's MSJ, the "evidence of covered causes of loss at Defendant's property" is highly disputed.  In addition, McCalls has no evidence that any purported damage to the Property caused by the September 1, 2014 storm exceeded the Policy deductible as required for any payment obligation to arise.[14]

20.     Mt. Hawley objects to ¶ 20 of McCalls' uncontroverted facts, which constitutes legal conclusions, not facts.  Of course, Mt. Hawley denies that McCalls is entitled to summary judgment on any of its counterclaims.  Moreover, under Missouri law, Mt. Hawley has the absolute right to seek a declaration regarding this disputed claim.  *See Watters v. Travel Guard Intern.*, 136 S.W.3d 100, 108-09 (Mo. Ct. App. 2004) ("When there is an open question of law or fact, the insurance company may insist upon a judicial determination of those questions without

---

[13] *See id*. at 6, ¶ 5.  McCalls admits that, other than one minor leak repair, G&R did not conduct any roof repairs for more than eighteen months after September 1, 2014.  *See* McCalls' Response to Mt. Hawley's MSJ [Doc. 55] at 11, ¶ 5 (admitting Mt. Hawley's undisputed fact 5).

[14] *See* supra n. 9.

being penalized."); *see also Macheca Transp. v. Phila. Indemn. Ins. Co.*, 649 F.3d 661, 674-75 (8th Cir. 2001).

## RESPONSE

**A. McCalls is not entitled to summary judgment on its breach of contract claim**

In order to be entitled to summary judgment on its claim for breach of contract, it is axiomatic that McCalls must establish as a matter of law, among other things, (1) that Mt. Hawley failed to pay a loss covered by the Policy, and (2) that McCalls suffered damage thereby. *See Wingo v. State Farm Fire and Cas. Co.*, No. 13-3097-CV-S-FJG, 2013 WL 5538776, *3 (W.D. Mo. Oct. 8, 2013), citing *Jackson v. Williams, Robinson, White & Rigler, P.C.*, 230 S.W.3d 345, 348 (Mo. Ct. App. 2007). Under Missouri law, the insured has the burden to show that the policy covers its claimed loss, including that the loss occurred during the policy period. *See J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007); *see also D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, No. WD 69631, 2009 WL 2382386, *2-3 (Mo. Ct. App. Aug. 4, 2009), *rev'd on other grounds* 316 S.W.3d 899 (Mo. 2010). Thus, McCalls must conclusively establish the following in order for any coverage obligation to arise: (1) direct physical loss of or damage to the Property; (2) such direct physical loss or damage occurred during the Policy Period; and (3) such direct or physical loss or damage exceeds the Policy deductible.[15]

1. <u>There is no evidence whatsoever of loss or damage to the Property during the Policy Period</u>

In its MSJ, McCalls has not cited any evidence whatsoever to even support, much less conclusively establish as a matter of law, that any purported damage to the Property occurred

---

[15] *See* Policy, **Ex. A** to Mt. Hawley's MSJ [Doc. 49], at 6-7.

during the Policy Period. This is not surprising, as there is no such evidence.[16] Rather than burden the Court with a recitation of the overwhelming evidence to the contrary, Mt. Hawley hereby incorporates by reference its previously-filed MSJ and the evidence cited therewith. Quite frankly, it is amazing that McCalls would even attempt a motion for summary judgment in the face of the <u>actual</u> evidence in this case. In fact, the notion that McCalls would seek summary judgment under the current record is truly absurd.

   2. <u>Faulty roof repairs left the roof susceptible to "wind uplift" for nearly a year-and-a-half before the Policy incepted</u>

Moreover, as established by Kevin Kirchmer's report, when G&R Construction conducted pre-Policy roof leak repairs between March 18, 2013 and June 18, 2014, they did not sweep back into place the river rock ballast covering the EPDM membrane.[17] According to Kirchmer, the river rock ballast provides both the sole wind resistance for the membrane and keeps the loose-laid insulation boards in place.[18] Kirchmer opined that G&R's faulty repair work left the membrane exposed and the loose-laid insulation "vulnerable to displacement during relatively normal and expected wind forces."[19] It is undisputed that it was only in those isolated areas where the river rock ballast was not swept back into place that the loose-laid insulation boards were displaced.[20] Because G&R's faulty repairs began approximately eighteen months before the Policy incepted, there is certainly evidence to support the fact that pre-Policy winds caused the insulation board displacement observed on the roof. This, in and of itself, defeats summary judgment for McCalls.

---

[16] *See* Mt. Hawley's MSJ [Doc. 49] at 11-12.

[17] *See* Kirchmer's October 6, 2016 Report, **Exhibit B** hereto, at p. 6-8.

[18] *See id.*

[19] *Id.*

[20] McCalls has admitted that displacement of insulation boards occurred only where the gravel had been previously swept back for roof leak repairs. *See* McCalls Response to Mt. Hawley's MSJ [Doc. 55] at 12, ¶ 13 (Admitting Mt. Hawley's Undisputed Fact 13).

3. <u>There is no evidence that McCalls' purported loss exceeded the Policy deductible</u>

Finally, McCalls has not even attempted to establish that the amount of any purportedly covered loss exceeded the Policy deductible in this case. McCalls admits there is no evidence of displaced insulation boards throughout the central portion of the roof or in areas where the river rock ballast remained in place.[21] Moreover, Carl Martin admitted that any hail that fell on the roof on September 1, 2014 was not of sufficient size to damage the river-rock ballasted roof.[22] As such, any purported hail damage to the insulation boards would also be confined to those areas where the river rocks were swept back for roof repairs and not replaced. As set forth in Mt. Hawley's MSJ, even giving McCalls the benefit of the doubt (by presuming that isolated areas of roof insulation board displacement, hail damage to the side of the Property, and hail damage to the metal roof of the "break area" occurred during the Policy Period), the total amount of loss even potentially covered by the Policy does not exceed the $38,607 Policy deductible.[23] This additional fact also precludes summary judgment for McCalls on its breach of contract claim.

4. <u>McCalls claim notice was untimely</u>

Mt. Hawley has pleaded late notice as an affirmative defense, and McCalls has made no effort to address that defense in its MSJ. It is a condition to coverage under the Policy that McCalls provide prompt notice of a claim or loss.[24] Under Missouri law, although typically a fact issue, whether notice was prompt can be determined as a matter of law where "all reasonable

---

[21] *See id.*

[22] According to Carl Martin's July 26, 2016 report, he found "no areas of surface damage consisting of penetrations or permanent deformations or isolated areas of stretching or sudden impact damage to the membrane materials." In addition, Martin reported there were "no significant repeating deformations" of aluminum shroud surfaces and no indication that "the entrance canopy surfaces and other soft metals" were exposed to hail impacts. *See* **Exhibit K** to Mt. Hawley's MSJ [Doc. 49] at p. 3-5. Finally, Carl Martin opined as follows: "[I]t is true that the widespread roof leaks reported were not a result of hailstone impacts." *Id.* at p. 6.

[23] *See* Mt. Hawley's MSJ [Doc. 49] at 12-14.

[24] *See* Policy, **Ex. A** to Mt. Hawley's MSJ [Doc. 49] at p. 16, ¶ **3.a.(2)**.

persons would conclude that notice or proof was not given or made within a reasonable time." *See Green Tree Servicing, LLC v. Chicago Title Ins. Co.*, 499 S.W.3d 771, 776 (Mo. Ct. App. 2016), citing *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 9-10 (Mo. banc. 1995).

In this case, it is undisputed that the first notice that McCalls provided to Mt. Hawley pertaining to the September 1, 2014 storm was nearly two years after it occurred, on June 20, 2016, thereby seriously complicating the analysis of determining when any purported storm damage occurred. McCalls contends that during that period of time, they made "continuous repairs to the roof leaks post-loss," and that roof leaks "got worse and more frequent" after the storm.[25] As set forth above, McCalls has cited no evidence to support either of these contentions.[26] But even assuming that McCalls could support these baseless contentions, such evidence would actually demonstrate that McCalls was well-aware of potential roof damage for nearly two years before ever notifying Mt. Hawley. McCalls has cited no evidence excusing its nearly two-year delay in providing notice to Mt. Hawley. As such, Mt. Hawley submits that under no circumstances could a reasonable person conclude that McCalls' notice was prompt. For this additional reason, McCalls is not entitled to summary judgment.

### B. McCalls is not entitled to summary judgment on its vexatious refusal claim

To obtain summary judgment under Missouri's vexatious refusal statutes, McCalls must establish as a matter of law that it submitted a claim covered by the Policy, **and** that Mt. Hawley's refusal to pay was without reasonable cause or excuse. *See* Mo. Stats. 375.420 and 375.296; *see also SJP Props., Inc. v. Mt. Vernon Fire Ins. Co.*, No. 4:14-cv-694-JAR, 2015 WL 4524337, *9 (E.D. Mo. Jul. 27, 2015); *Minden v. Atain Spec. Ins. Co.*, 788 F.3d 750, 756 (8th Cir. 2015).

---

[25] *See* McCalls' MSJ [Doc. 51] at 4, ¶ 5 and 6, ¶ 18.

[26] *See* supra at 2-3.

For the reasons set forth above and in Mt. Hawley's MSJ, McCalls has clearly not established as a matter of law either a covered claim or that Mt. Hawley lacked reasonable cause or excuse to deny McCalls' claim. To the contrary, the undisputed evidence demonstrates that McCalls' cannot establish any loss or damage during the Policy Period exceeding the Policy deductible.[27] In addition, McCalls demanded Mt. Hawley pay substantially more than McCalls could recover even assuming its claim was covered (which it is not), thereby vitiating McCalls' vexatious refusal claim as a matter of law.[28] *See, e.g., Chernus v. Kennedy-Coets Construction Co.*, 55 S.W.2d 744, 752 (Mo. App. 1932) ("defendant was not required to make a tender of a lesser amount than that contained on the face of plaintiff's demand."); *see also Cross v. Pureless Ins. Co.*, 351 S.W.2d 826, 829 (Mo. App. 1961) ("no recovery under the statute can be had when the insured seeks a recovery of more than that to which he is entitled."). Moreover, as explained in great detail in Mt. Hawley's MSJ and Response to McCalls' Motion to Exclude Kevin Kirchmer from testifying at trial, Mt. Hawley reasonably relied on its engineering expert's investigation and opinions when it denied McCalls' claim.[29] Finally, as also set forth in Mt. Hawley's MSJ and its Response to McCalls' Motion to Exclude, Mt. Hawley's investigation was both thorough and obviously reasonable.[30]

## CONCLUSION

For all of these reasons, McCalls is clearly not entitled to summary judgment on its counterclaims.

---

[27] *See* Mt. Hawley's MSJ [Doc. 49] at 11-14.

[28] *See id.* at 16.

[29] *See id.* at 16-19; *see also* Mt. Hawley' Response to McCalls' Motion to Exclude [Doc. 54].

[30] *See* supra, n. 29.

WHEREFORE, premises considered, Mt. Hawley Insurance Company respectfully requests that the Court deny McCalls' Motion for Summary Judgment, and for such other and further relief to which it may be entitled.

Respectfully submitted,

*/s/Greg K. Winslett*
GREG K. WINSLETT
TX State Bar No. 21781900
gwinslett@qslwm.com
MICHAEL D. FEILER
TX State Bar No. 24055475
mfeiler@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

and

VINCENT F. O'FLAHERTY
State Bar No. 34693
vaflaherty@voflaw.com
LAW OFFICES OF VINCENT F. O'FLAHERTY, ATTORNEY, LLC
2 Emanuel Cleaver II Blvd., Suite 445
Kansas City, Missouri 64112
Tel.: (816) 931-4800
Fax.: (816) 756-2168

***ATTORNEYS FOR MT. HAWLEY INSURANCE COMPANY***

## CERTIFICATE OF SERVICE

I certify that on February 22, 2018, a true and correct copy of the foregoing was served on Defendant/Counter-Plaintiff's counsel *via* ECF, pursuant to the Federal Rules of Civil Procedure.

*/s/ Michael D. Feiler*
Michael D. Feiler

4812-5783-9453, v. 1