UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:16-cv-04272-BCW |
| | ) |
| MCCALLS COUNTRY CANNING, INC. | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF
MT. HAWLEY'S MOTION FOR SUMMARY JUDGMENT
AND SUGGESTIONS IN SUPPORT**

COMES NOW, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), and files its Reply in Support of Motion for Summary Judgment and Suggestions in Support, and would respectfully show the Court the following:

**OBJECTIONS TO MCCALLS' UNDISPUTED FACTS**

1. Mt. Hawley objects to ¶ 1 of McCalls' undisputed facts. McCalls has not cited any evidence whatsoever that it sustained a hail and wind loss on September 1, 2014. As set forth in Mt. Hawley's Response to McCalls' MSJ and in Mt. Hawley's MSJ, there is no such evidence.[1]

2-5. Admitted.

6. Mt. Hawley objects to ¶ 6 of McCalls' undisputed facts. Greg Martin had not seen the denial letter before his deposition, and counsel inaccurately paraphrased the letter rather than asking him about the actual language therein.[2] Moreover, Mt. Hawley's position was, and has always been, that there is no evidence hail damaged the Property on September 1, 2014.

---
[1] *See* Mt. Hawley's MSJ [Doc. 49] at 11-12; Mt. Hawley's Response [Doc. 56] at 5-6.
[2] *See* **Exhibit A**, G. Martin Depo. at 76:18-77:2; 77:8-12.

**REPLY IN SUPPORT OF MT. HAWLEY'S
MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT**      Page 1

7. Mt. Hawley objects to ¶ 7 of McCalls' undisputed facts. McCalls has cited no evidence whatsoever that any purported hail damage observed by Greg Martin occurred during the Policy Period, or that such damage exceeded the Policy deductible.

8-9. Admitted.

10. Mt. Hawley objects to ¶ 10 of McCalls' undisputed facts because it is misleading as phrased. In particular, there is nothing in Pemberton's report to suggest he actually inspected the roof of the Property. To the contrary, Pemberton only accessed the following areas of the Property: "During the visit I accessed the retail store/offices, plant floor, electrical panels, sprinkler system and sprinkler risers, and the warehouse rack storage."[3]

11-12. Admitted.

13. Admitted; however, for completeness it should be noted that Pemberton's Wind Report was based on information provided by McCalls' employee: "I met with Andy Lutz, the production manager, who was cooperative and assisted in developing information for this report."[4] "Insured reports they have had no losses."[5] It is undisputed that McCalls was forced to hire G&R Construction to repair roof leaks on June 17 and 18, 2014, just a little over one month before Pemberton's inspection.[6]

14-16. Mt. Hawley objects to ¶¶ 14-16 of McCalls' undisputed facts. McCalls has not even attempted to explain how the Commercial Building Valuation Report is in any way relevant to its property damage claim. This is because there is no relevance whatsoever.

17-18. Admitted.

19. Mt. Hawley objects to ¶ 19 of McCalls' undisputed facts. As it has attempted to do in its Motion to Exclude Kirchmer and Response to Mt. Hawley's MSJ, McCalls blatantly

---

[3] *See* RRI Report (**Ex. C** to McCalls' Response [Doc. 55]) at 1.
[4] *See id.*
[5] *Id.* at 2.
[6] *See* McCalls' Response [Doc. 55] at 11, ¶ 5 (admitting G&R Construction roof leak repair timeline).

misrepresents the scope of Kirchmer's investigation. It is absolutely undisputed that Kirchmer inspected the roofing system for hail **AND** wind damage.[7]

20. Mt. Hawley objects to ¶ 20 of McCalls' undisputed facts. Contrary to McCalls' false representation, it is undisputed that Kirchmer inspected the roofing system for wind damage with McCalls' engineer, Carl Martin.[8]

21. Admitted.

22. Mt. Hawley objects to ¶ 22 of McCalls' undisputed facts. McCalls' refusal to acknowledge Kirchmer's second inspection and report borders on the absurd. It is undisputed that Kirchmer also relied on a CoreLogic wind verification report and his own research using data from the NOAA website.[9]

23-24. Admitted.

25. Mt. Hawley admits that McCalls took Kirchmer's deposition on December 21, 2017, but denies that **Exhibit E** to McCalls Response is a complete copy of the transcript.

26-28. Admitted.

29. Mt. Hawley objects to ¶ 29 of McCalls' undisputed facts, which cites no evidence to support the misleading implication that the photographs mentioned therein were provided to Mt. Hawley. As McCalls well knows, there is no evidence to suggest that those photographs were ever provided to Mt. Hawley.

30-32. Admitted.

33. Mt. Hawley objects to ¶ 33 of McCalls' undisputed facts, which once again blatantly ignores reality and misrepresents the scope of Kirchmer's investigation. It is beyond

---

[7] *See id*. at 12, ¶ 13 (admitting Kirchmer inspected the Property with Carl Martin on Sept. 19, 2016); *see also* **Ex. I** to McCalls' Response [Doc. 55].
[8] *See* supra n.7.
[9] *See* Kirchmer Depo. (**Ex. A** to Mt. Hawley's Response [Doc. 56]) at 111:20-112:3; *see also* Kirchmer's Oct. 6, 2016 report (**Ex. I** to McCalls' Response [Doc. 55]) at 8.

dispute that Kirchmer was asked to evaluate the roof of the Property for hail **AND** wind damage.[10]

33. Admitted.

35. Mt. Hawley objects to ¶ 35 of McCalls' undisputed facts. There is nothing in Altschule's report indicating that 1.8" hail "struck the property."

36. Mt. Hawley objects to ¶ 36 of McCalls' undisputed facts. The CoreLogic Wind Verification Report and Hail Verification Report contradict Altschule's report.[11]

37. Mt. Hawley objects to ¶ 37 of McCalls' undisputed facts. Carl Martin's July 26, 2016 report makes no mention whatsoever of damage to the roof membrane as a result of wind.

38-42. Admitted.

43. Mt. Hawley objects to ¶ 43 of McCalls' undisputed facts. The insulation board depicted in photographs 29-31 did not shift due to wind, but instead was lifted on one side due to downward pressure from a fastener on the opposite side of that panel.[12] These photographs depict the area where the river rock ballast remained in place until the test cut was made by Kirchmer and Carl Martin.

44-46. Admitted.

47. Mt. Hawley objects to ¶ 47 of McCalls' undisputed facts. Kirchmer explained his 5 percent calculation as follows:

> Q. Okay. How did you calculate less than 10[5]% of the main roof area?
>
> A. I think I looked back through the pictures and estimated, you know, what the lengths and the widths of those areas were where the gravel was displaced and then compared that to the overall size of the roof that was based on the EagleView aerial measurement report and came up with less than 5%.

---

[10] *See* supra, n.7.
[11] *See* McCalls' Response [Doc. 55] at **Ex. D**, pp 34-35; **Ex. G**, pp.50-51.
[12] *See* supra, n. 7; *see also* Kirchmer Depo. (**Ex. A** to Mt. Hawley's Response [Doc. 56]) at 159:7-160:8.

**REPLY IN SUPPORT OF MT. HAWLEY'S**
**MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT** Page 4

> Q. But you didn't—that's not a hard number, correct?
>
> A. I think it's a conservative number in respect of it's not more than 5%. It's like 5% would be the maximum.[13]

Moreover, an overhead satellite photograph of the Property clearly supports his testimony.[14]

48. Mt. Hawley objects to ¶ 48 of McCalls' undisputed facts. McCalls did not provide the Lutz Photographs to Mt. Hawley. Rather, those photographs were provided to Greg Martin by Bill Cox on or about September 20, 2016.[15] As noted above, there is no evidence whatsoever that Greg Martin forwarded those photographs to Mt. Hawley or Kevin Kirchmer.

49. Admitted.

50. Mt. Hawley admits that McCalls took Campen's deposition on October 5, 2017, but denies that **Exhibit L** to McCalls Response is a complete copy of the transcript.

51-53. Admitted.

54. Mt. Hawley objects to ¶ 54 of McCalls' undisputed facts because it is irrelevant to any issue in this case.

55-58. Admitted.

59. Mt. Hawley objects to ¶ 59 of McCalls' undisputed facts. While Campen testified he had personally not vetted Kirchmer or ED&T, he explained that Greg Martin told him that he had had very positive experiences with ED&T, and that he relies on the recommendations of Mt. Hawley's independent adjusters.[16]

---

[13] *See* Kirchmer Depo. (**Ex. A** to Mt. Hawley's Response [Doc. 56]) at 165:2-14.
[14] *See* McCalls' Response [Doc. 55], **Ex. K**, p. 69.
[15] *See* September 20, 2016 email (**Exhibit B** hereto).
[16] *See* Campen Depo. (**Ex. L** to McCalls' Response [Doc. 55]) at 54:1-10; 54:23-55:4.

60. Mt. Hawley objects to ¶ 60 of McCalls' undisputed facts because it implies that Campen could recall reading any ED&T reports other than those at issue in this case. He could not.[17]

61-67. Admitted.

## RESPONSE

**A. No Evidence Of Damage During Policy Period**

Incredibly, McCalls actually contends that the RRI report constitutes "undisputed evidence" that the Property had sustained no losses or damage to the roof and building prior to July 1, 2014.[18] This attempt to manufacture a fact issue merely demonstrates what Mt. Hawley stated in its MSJ: McCalls has no evidence whatsoever that any damage to its Property occurred on September 1, 2014. The purported "conclusion" in the RRI report that there was no evidence of roof leaks is unequivocally refuted by the G&R Construction roof repair timeline, which McCalls itself admits establishes that roof leak repairs were performed at least seven times before July 1, 2014.[19] At the end of the day, the most that can be said about the RRI report is that it demonstrates Pemberton's inspection was incomplete and that McCalls' employee Lutz did not remember calling G&R Construction to make those repairs.

McCalls also attempts to create a fact issue with the "Lutz Photos," contending they somehow show "building damages," while ignoring the undisputed fact that **none** of these undated photographs show any damage whatsoever to McCalls' Property or any other building in the vicinity.[20] **In fact, those photos do not even depict the roof of McCalls' facility**. All they show are some broken power poles some distance away from McCalls' Property.

---

[17] *See* Campen Depo. (**Ex. L** to McCalls' Response [Doc. 55]) at 56:4-9.
[18] *See* McCalls' Response [Doc. 55] at 13.
[19] *See* Mt. Hawley's MSJ [Doc. 49] at 11-12; McCalls' Response [Doc. 55] at 11, ¶ 5 (admitting G&R Construction roof leak repair timeline).
[20] See McCalls' Response [Doc. 55] at 13.

Further illustrating McCalls' total inability to establish a loss during the Policy Period, McCalls cites testimony by Greg Martin, who McCalls contends "disagreed with insurer's conclusion that no hail damage existed at the building."[21] Of course, Mt. Hawley has never said "no hail damage existed."[22] As Mt. Hawley has always maintained, there simply is no evidence of any hail damage during the Policy Period.

Finally, without any explanation whatsoever, McCalls contends that Kirchmer's opinion as to the scope of displaced insulation boards somehow contradicts the RRI report.[23] Of course, as noted above, the RRI report is itself unequivocally inaccurate insofar as McCalls admits it hired G&R Construction to make roof leak repairs on at least seven occasions prior to July 1, 2014, including twice less than two weeks before the Policy incepted.

**B.    Any Loss During The Policy Period Did Not Exceed The Policy Deductible**

Next, to try to establish a loss that exceeds the Policy deductible, McCalls disingenuously claims Carl Martin opined during his deposition that the entire roof needs to be replaced.[24] As can be seen below, Mt. Hawley gave Mr. Martin every opportunity to express that opinion, but he specifically declined to do so. To clear up any confusion regarding Carl Martin's opinions, the testimony cited by Mt. Hawley on this issue is set forth in full below:

> Q.   Okay.· Let's look at No. 3.· To address the damage-related wind and hail, removal and replacement of the ballast, the EPDM membrane, and the 1-inch polystyrene insulation would be required. Did I read that right?
>
> A.   You did.
>
> Q.·  **So you're now saying in this report that the entire roof needs to be replaced, aren't you?**
>
> A.   **I don't see the word "entire" in there at all**.

---

[21] *See id.* at 14-15.
[22] *See* October 17, 2016 letter, **Ex. K** to McCalls' Response [Doc. 55].
[23] *See* McCalls' Response [Doc. 55] at 15.
[24] *See id.* at 16-17.

Q. Well, you tell me. Is it your -- is it your opinion -- based upon this second inspection that you went out and did, is it your opinion that the entire roof needs to be replaced?

A. **It would be my opinion that to the extent that EPDM movement in the -- and -- movement of the substrate has occurred in those areas, you -- there's only one way to address that, and that's to remove and replace it. Never do I say entire, because I – there are -- there is likely portions that show absolutely no wind damage**. There's portions there. But the question is, Can you find and can you cost-effectively repair them? And what I've said here is, to be very succinct again, even though I'm not colluding (sp) with anything, is to say not -- the word "entire" never shows up here, because I'm just saying the truth of what I find, which is, hey, you've got movement of the substrate and stretching of the EPDM in those areas, you've got to take it off and replace it.

Q. As a practical matter, aren't you saying that the entire roof needs to be replaced?

A. As a practical matter, that's quite possible.· But it -- I am not -- I guess **at this point I'm not willing to say, I know that for a fact that it has to be**. Because it could be where they start pulling off a whole section and they -- as they pull the membrane back, they find, hey, in this area it's not -- it hasn't shifted, it hasn't lifted, it's not deformed, there's no leaks. All you have to do is --

Q. All right. So I just want to make sure I'm clear. Then as we sit here today, you are not expressing the opinion that that entire roof needs to be replaced; is that correct?

A. Again, I think that that is correct. **I can't say that I know the entire roof does**.

Q. Well, with respect to No. 3, your third opinion, when you say the EPDM membrane and the – and replacement of the EPDM membrane and the insulation would be required, I mean, you're pretty much talking about the entire body of the roof, aren't you?

A. It would most -- especially in the areas that we documented we -- that we had wind problems. So, yes.

A. **Again, I don't say -- ever say the entire or complete roof replacement. I'm saying you need to address the areas of damage.**[25]

---

[25] *See* C. Martin Depo. (**Ex. E** to Mt. Hawley's MSJ [Doc. 49]) at 127:8-128:19; 129:9-16; 130:24-131:1 (emphasis added).

**REPLY IN SUPPORT OF MT. HAWLEY'S**
**MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT**   **Page 8**

Obviously, McCalls' contention that Carl Martin opined that the roof needs to be totally replaced is refuted by his actual testimony.

C.  **Mt. Hawley's Denial Was Reasonable**

In its Response, McCalls contests the reasonableness of Mt. Hawley's denial by curiously suggesting that Mt. Hawley "ignored its own investigators' conclusions."[26] In support of this baseless contention, McCalls discusses Greg Martin's photographs, and ignores his actual reports. Obviously, this is because his reports support Mt. Hawley's denial, as follows:

> On the CoreLogic report, in the period 3/11/06-4/10/16 only five hail events at this location were reported, with four showing .8" hail and one showing .9" hail. Nothing in either of the reports you obtained shows hail anywhere near close to this building with the 2" hail reported by Splash Solutions.
>
> I found no hail damage anywhere to the ballasted EPDM roofing. The PA had chalked some areas where there was oxidation disturbance at most, but no evidence of fractures in the EPDM.
>
> On the W elevations, where there is some steel siding, I saw what appeared to be small hail strikes both in the field and on the seams, but they were few in number.
>
> I did see some hail occasionally to an aluminum roof vent, or power wall vent on the W side. But none appeared to be anywhere near the 2" hail claimed by Splash Solutions.[27]

McCalls also contends, without any explanation or support, that Kirchmer's conclusion that shifted insulation boards under the EPDM membrane occurred to at most 5% of the roof somehow required Mt. Hawley to pay to replace the roof.[28] McCalls has no evidence to contradict Kirchmer's conclusion as to the scope of loss. Even giving McCalls the benefit of the doubt, its loss does not exceed the Policy deductible.[29]

---

[26] *See* McCalls' Response [Doc. 55] at 18.
[27] *See* July 11, 2016 report (**Ex. D** to Mt. Hawley's MSJ [Doc. 49]) at 2.
[28] *See* McCalls' Response [Doc. 55] at 18.
[29] *See* Mt. Hawley's MSJ [Doc. 49] at 12-14.

**REPLY IN SUPPORT OF MT. HAWLEY'S
MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT**     Page 9

McCalls also contends that Mt. Hawley's denial was without reasonable cause or excuse because Kirchmer did not review Greg Martin's photographs or the Lutz photographs.[30] Of course, as McCalls well knows, there is nothing in Greg Martin's file, Mt. Hawley's file, or Kevin Kirchmer's file to indicate that the undated Lutz photographs (**which do not even depict the roof of McCalls facility**) were ever provided to Mt. Hawley or Mr. Kirchmer. Moreover, McCalls fails to explain why Kirchmer had to review Greg Martin's photographs when he took his own during both of his inspections.

Finally, McCalls' contention that Mt. Hawley somehow "hid" the RRI report from Kirchmer is beyond bizarre. As discussed above, it is clear that report, based on information provided by McCalls' own employee, did not accurately reflect the true condition of the roof; McCalls has explicitly admitted that it hired G&R Construction to make roof leak repairs on two occasions approximately a month before Pemberton inspected the property on July 22, 2014. There is no evidence McCalls disclosed these then-very recent repairs to RRI.

## CONCLUSION

As is frequently the case when an insured inexplicably delays reporting a claim to its carrier for over eighteen months, McCalls is left without evidence to establish a covered loss during the Policy Period. This, in and of itself, is fatal to McCalls' claim. Moreover, even assuming a covered loss, McCalls has no evidence to establish it would exceed the applicable deductible. In conclusion, Mt. Hawley has addressed each and every contention made by McCalls, and would respectfully submit that it has demonstrated as a matter of law that it is entitled to summary judgment in this case.

---

[30] *See* McCalls' Response [Doc. 55] at 18.

Respectfully submitted,

*/s/Greg K. Winslett*
GREG K. WINSLETT
TX State Bar No. 21781900
gwinslett@qslwm.com
MICHAEL D. FEILER
TX State Bar No. 24055475
mfeiler@qslwm.com
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

and

VINCENT F. O'FLAHERTY
State Bar No. 34693
vaflaherty@voflaw.com
LAW OFFICES OF VINCENT F. O'FLAHERTY, ATTORNEY, LLC
2 Emanuel Cleaver II Blvd., Suite 445
Kansas City, Missouri 64112
Tel.: (816) 931-4800
Fax.: (816) 756-2168

***ATTORNEYS FOR MT. HAWLEY INSURANCE COMPANY***

## CERTIFICATE OF SERVICE

I certify that on March 7, 2018, a true and correct copy of the foregoing was served on Defendant/Counter-Plaintiff's counsel *via* ECF, pursuant to the Federal Rules of Civil Procedure.

*/s/ Michael D. Feiler*
Michael D. Feiler

4851-8506-5310, v. 1